Good morning, Your Honor. Mark Peterson on behalf of the defendant Roger Rubin. Josh Vinson on behalf of the law firm defendant Berman Swerdlund. Gentlemen, you're going to split your times? Well, I'm probably going to take about ten and Mark's probably going to take about five. Okay, that sounds about right. Fifteen total. You've coordinated so that... Yes. Okay, and you have an opportunity to... fifteen minutes and an opportunity to respond. We'll let them both go before you are allowed to address us in rebuttal, okay? Fair enough? That's fine. Very well. I think you can safely assume we're familiar with your briefs. Justices, this is a legal malpractice case that was dismissed at the pleading stage on a 2-619 motion pursuant to statute of limitation and statute of repose and we have approximately six or seven dates that we believe are significant with regard to this particular malpractice claim. The most significant point as far as Mr. Mauer is concerned are the representations that were made to him by his attorney after the marital settlement agreement was entered into and disposed of that would have been in June of 2001. It was shortly after the marital settlement... Now, why did those representations make a difference here? They make a difference because of the issue of fraudulent concealment. Oh, it does? Yes. How about the fact that there were two years available after it was totally discovered and after a new lawyer was hired to file within the statute of repose time frame? And the cases are quite clear. There are at least four or five cited that make it clear that where it can be rectified within the time frame of the original statute of repose that you don't start giving new time. And when you do give new time, you don't give the full time. You only give the reasonable time necessary to rectify it. I have the author, distinguished author of that, sitting right next to me. Well, it's our opinion, Justices, that Mr. Johnson was not a successor counsel in that case because he represented the plaintiff in a different case. But do you see here what's really... Well, I don't know. Maybe it's just an impression I get. One of the problems you have, it seems to me, is there is a tendency, and even in some of the opinions, I have to admit it, even in some of the opinions, there is a tendency to use language that would seem to suggest that the discovery rule applies to the statute of repose just as it does to the statute of limitation. Would you agree that there's enough ambiguity in some of the cases? Without citing to the author, I was looking at one of them in particular. And the language, and it is not my problem, but here's the language that was allowed to stand in a published opinion. When the acts of representation end, the period of repose must begin. But they use the phrase, when the acts of representation end. But that is the language of 24.3, though. I know. The last act of representation. But it would appear, when you say acts of representation end, it would appear to really extend the tale beyond what clearly the statute of repose is designed to avoid. And that is an endless tale. The only case that helps you there, and only in a very limited degree, is the Roche case. That looks to the date of delivery, when you have a document case, as the last act of representation. But otherwise, the failure to take remedial measures once the negligence occurs, is documented, I mean, again, in the Mauer case, and in, what is it? The Trogee, the Hester case, the Witt case, it's quite clear that the period of time during which the representation extended, during which there could have been remedial efforts, do not count against the statute of repose. That what counts is the causative act, and we don't mean, and this should be distinguished, I suppose, from contributing causes, because technically, the failure to take remedial action can be a contributing cause, at least in the universe of discourse. But it's the causative act, the prime act, even in the case of workman's compensation, where there was a default on an appearance, and could have easily been cured by just reinstating the case. And the court there held that the failure to reinstate, that the time period during which the reinstatement could have taken place, and the omission of the reinstatement during that time, doesn't count to toll the period of repose against the initial default. And if that's the case here, we have an initial default here, on the, what is it, October, June 18th of 01. There's no question that the erroneous, that the wrong judgment was entered, the wrong agreement was entered. And Hester actually, I cite that as something that supports our end of the case, because Hester ended up being a person of practice. They're not quarreling with malpractice. That's a given in this particular case up to this point. I mean, that's not the issue. The issue is the statute of repose. And whether you can toll it, and what does toll it? What tolls it would be from a judicial point of view. I can give you a good example of where you might be better off. If you had an email prepared by the defendant attorney in this case that says, an internal email that says, you know, I really screwed up in this case, but we're coming up on the last year of the statute of repose. If we can just put him off until such and such a date, we'll be fine. There you might have, you know, the kind of case that you're looking for. But there's no evidence of that. Well, we have, there's only one bit of evidence in this case, actual evidence, and that's the affidavit of Marshall Maurer, which is unchallenged. Yeah, but there's a lot of evidence that you had, that the client, the wrong client here, was on notice very early on, very early on. Pick a date, pick a date, that the particular documents, the legal documents upon which you were relying were unreliable. You had conclusive evidence of that, forgetting about arguably other state, earlier stages, which could also be claimed as evidencing to the awareness, into the awareness of the plaintiff, the fact that he has a cause, that a negligent act was performed, because for purposes of the repose, you don't look to see when the cause of action occurred. You look to see when the negligent act took place. And there were many indicia along the line, but the conclusive one was at the point where his wife, on October 11, 2005, got her recovery and her conversion action without permitting the defensive set off. That's correct. To be interposed. At that point, the plaintiff could no longer claim any kind of a reliance on false assurances or any other kind of estoppel type of contentions that he could make to stop the defendants from using their statute of repose defense. And at that point, he still had two years, 20 months, within which to do something to file his action. And he did. No, he didn't file it. He filed it 20 months later. The suit was filed, according to my records, 2007, October. The judgment was entered 2005, October. It was filed within two years. He was three months too late, and he could have easily have filed it within the time period that would still be within the range of the statute of repose. And the cases are very clear that, starting with the old case of Anderson, Celotex, dealing with statutes of limitations, which have been extended into statutes of repose without question, there are absolutely no contrary decisions, saying that in a statute of repose, the fact that you could remediate that you could remediate the consequence of the fraudulent concealment or of the misrepresentations within the time frame, if you could do it, you don't get a new bite at the apple. You don't get a new time period. Well, I'm trying to go back to the very first thing that you said, and that was 15 months or however many months. There was, this suit was filed within two years of the date of the judgment in the United States. You're acting as if the statute of repose no longer exists. No, I am not. And all I'm telling you is, as you well know, I'm sure, because you wrote a very learned brief. So I think you know where your weaknesses are in your presentation. And you know that if the concealment is discovered within a reasonable time that gives you an opportunity to act within the original statute of repose, that you don't, that the defendant, notwithstanding his bad conduct, his unconscionable conduct, does not forfeit the benefit of that statute of repose. The cases are clear. But there were a couple of things that were done here. Not only was a mistake made back when the judgment was entered, but there were statements that were made by the plaintiff's attorney. When it was discovered very soon after by the plaintiff himself, we'll fix it, is what the attorney said. We'll take care of it. We'll fix it after Mowat versus Mowat was decided? Sure. That's part of Marshall Mowat's affidavit. He discovered that a schedule that was supposed to be attended to the judgment was missing. He brought that to Ruben's attention within two weeks of the date of the judgment. Ruben told him at that particular period of time, and this is the only evidence at this point on this fact, he means after the wife got the judgment in the conversion action, that he was still being led down the primrose path. Not at that point. Well, that's what I'm talking about. And that at that point was reached, what is it, 17 months? I haven't counted it up. Before the period of repose expired. Well, maybe we have an issue as to when the repose began to run. Well, that's of course, it's exactly it. Once you assume that the repose ran from the date of the negligent act. Which would have been June 18th, 2001. Right. Then he had time to remediate. And if that's what you're dealing with, then at that point, the assurances, et cetera, that give rise to an equitable estoppel or to a fraudulent concealment, when you have one, you don't have to analyze the other, as the Supreme Court said. At that juncture, the benefits that would accrue to the plaintiff as a result of the conduct of the defendant are no longer of any value. My position, though, is that, or our position here, is that the defendants cannot rely on the statute of repose. Well, if you had another period, yeah. But you see, you're indicating a double speak here. Because if you don't rely on that date as being the beginning of the statute of repose period, you see, then if it's another date, then we don't have to talk about misrepresentations or other sorts of reliance. We're within the statute of repose. You know, you don't have to defend against the statute of repose. If you're talking about concealment, it means that you're saying, even if the statute of, even if the period of repose ran, the plaintiff cannot avail, the defendant cannot avail himself of it under an equitable estoppel doctrine, or you have a new five-year action under the fraudulent concealment statute. But if you say that's not when the period of repose begins to run, then, again, we don't have to worry about whatever reassurances or misrepresentations were made, because you don't need that. Well, we're also alleging that there were a series of negligent acts here. It wasn't just the first act. And I understand there's a difference between continuous acts Unless you can show that one of those early stages during which the period of repose could run was so close to the expiration of the period that no remediation could reasonably have taken place, then we're talking about something that is superfluous. Well, we don't believe that, you know, we think that the statute of repose was told during the period of time when the attorneys were negligently representing, were negligently representing malware. And it continued not just from June of 01, but through their failure to Their representations by themselves, if I hear you, between the lines. And you're not saying that patently. But the latent content of what you're saying is that these acts of these false assurances and these misrepresentations somehow were a continuation of their negligent conduct, which prolonged the, which until they end, is, tolls any running of the period of repose. Absolutely. That's what I read between your lines, except that the cases, again, discount the failure to take action subsequently or the false misrepresentations as extending the period of repose. They only deal with those factors in the context of an equitable estoppel, the invocation of equitable estoppel, or the fraudulent concealment statute. But they don't, by themselves, there is no Cunningham rule operative here that continued negligent treatment until that ends, the period of limitations doesn't begin. That's in Cunningham, where you have a period of negligent, the continuation, the continuous negligent treatment. And Cunningham in itself repudiates the pre-existing, or the rules in other jurisdictions, that continuing treatment is in itself. What do you think your best case is? The best case is that we have a, not just a. No, I'm talking about the cases that are published that you're relying on. You list a lot of them. Right. And you try to use, you know, you try to argue. Has to be as is the one that. Well, that's the equitable estoppel case. Okay. But you don't have equitable estoppel here because you don't show that the last act of representation took place within the period of repose. But too close to the expiration of that period for any remediation to have occurred during that time. Somebody's misreading Hester because the trial judge relied upon it to full rule against you. Now you're relying on it to say he was wrong. Well, because they said that the negligent act, the negligent act in Hester was when he was the DWP that was entered in the worker's comp case. Yeah. Even though that DWP could have been reinstated with a mere gesture. That's correct. That's correct. And in this case, as in Hester, in our case, there were representations made to the client. We'll take care of it. This is going to be taken care of. Don't worry about it. That's the problem. The problem is. Okay, so then what you're really saying is that the statute of repose did not begin to run in June of 2001, or did it? And then it was told. You've got to make a choice. Is it running and told, or did it even start? Well. What's your theory? My. Are you going to use both theories? Which you could do. And I'd like to use both, but to give you an argument. Whichever one fits better. Number one is told. You may want to use both. Yeah. But in point of fact, we can only use one. Well, we might end up picking the one that favors you, which would be that the statute didn't begin to run. The statute of repose didn't begin to run until you fired it. Except that that is contradicted even by Hester. In fact, most strenuously by Hester. Because Hester tells you that what you look at is the initial act that creates the problem. But he's got some language in Fricka that he can rely on. That's what I was going to say. When it was your best case, I thought you were going to turn to Fricka. Because Fricka has this one sentence in it which I think might have been improvidently drafted. When the acts of representation end,  Well, technically speaking, the acts of representation didn't end until he was fired. But Fricka cannot conceivably mean that the acts of representation is the equivalent of representation. Fricka does not say that the statute begins to run when the representation ends. It talks about when the act of representation ends. And that's a term of art that all of the cases deal with. So you're being very nice to the author of Fricka. But I wouldn't have said it that way myself. In determining that the act that creates the problem ends, at which, surprisingly, will end in a document's case when the document's delivered. Well, the act for the problem was actually at the very end when it was just withdrawn. It was withdrawn. And at that point in time, there was no remedy. There was no remedy for Maurer. In addition to that, he was told at that point in time by his attorney Rubin, that's OK. Disagreement is good anyway. And then they don't find out. But by the time that the wife recovers in the conversion action, what's left of that? Your client, after all, is not mentally challenged. He's a man of considerable wealth. Yes, he is. And I don't have to make inferences of how sophisticated he is. But he certainly gets the message when, after all of the promises that the divorce settlement would be reshuffled as it was originally intended to be, that the court, that the wife doesn't agree to it. And the court rules in the wife's favor. I mean, at that point, he knows that the jig is up. That's all. Yes, so once he knows that, where does he then have to go? Can he then sit on his haunches and wait until the period of repose passes, and then ultimately decide to do something? No. He has to act within a reasonable time so that if he can do whatever he has to do to get his lawyers on the carpet for some damage recovery, he has to do that within the period of repose if reasonably available to him. And 17 months, or what have you, is I don't think we have to take evidence to know that 17 months, even with the backlog that his successful lawyers may very well have, is a reasonable time within which to take action. Might I just raise just one other issue on this? And it has to do with the fiduciary duty of an attorney to represent a client, to be truthful to a client. Yeah, well, that's fine. Obviously, a client, the fiduciary duty of a client not to conceal. And if that's a law of concealment law, in other words, ordinarily, if you're dealing at arm's length, you have to take affirmative action to conceal. When you're dealing with a fiduciary who may be a lawyer, inaction is action, because the fiduciary has an affirmative duty to disclose. He doesn't have to wait to be asked. But that only covers whatever rights he may be entitled to under a fraudulent concealment theory. And if, under fraudulent concealment, he cannot avail himself of that factor as a cause of action, if the discovery of the concealment takes place within a reasonable time to act within the period of repose, then fine. Then very well, his lawyers may very well have been under a duty to the last minute to disclose until he discovers. And is there any question that he discovers the concealment when the court makes its judgment in favor of the wife? The answer is, I'm waiting for an answer from you, but to me it seems relatively conclusive. Well, why doesn't the repose period begin at the time when the attorney Rubin last negligently represented Marshall Maurer, and that starts at his time? What would that date be? That would be 2-16-05, when he withdrew that motion. OK. Was that before or after he had in his possession the check that was made out to Francis, your client? I'm not following that. Well, you know, you're arguing either equitable estoppel or fraudulent concealment has prevented him from knowing he has a cause of action. But when the Wedgwood Nursing Pavilion program was finally resolved, whoever looked at the settlement agreement and decided who was entitled to what, cut a check. That check was made payable to Francis. That was the whole basis of the conversion action. Yes. Well, but the check was sent to your client, who sat on it for how long, two years? Until the conversion suit was resolved. Well, because he had been told by Maurer, during the underlying divorce case, that the agreement was fine, even as it stood. Even though he had in his possession a check made out to his ex-wife? Yes. Which he refused to turn over, which would have led to the conversion action. He refused to turn that over because he believed that he had a counterclaim. That he could set it off. That he could set it off. Yes. He had an $831,000 check in his hand. On one of their pieces of property. You're right. On one piece of property. What would seem to suggest, given the fact that the check was in his possession, that he had some knowledge that there was something wrong with the settlement agreement? Oh, I don't. Somebody read it the other way. Well, he actually probably knew, detected something wrong within two weeks after he saw that agreement. Except that he was then lulled by the lawyers in thinking they would fix it. Yes. That's fine. That's fine. But you run out your string of your ability to use those facts. Once he makes his discovery, which was in 2005, when the decision came down in favor of the wife. And at that point, he can no longer rely on anything his lawyers tell him about this. But then he has to agree with it. But he fails to act. He has to agree with it. He has to act before the original statute of repose runs. And he doesn't do that. And when does it begin? It doesn't begin when they are lulling him. It begins when they committed the negligent act in the first instance. The cases are clearer. Yes, that's what has to happen. And if it starts when the original negligence occurred, that would be on June 18th of what is it? 2001. 2001. 2001. Why not when the last negligence occurred? What's that? Why not when the last negligence occurred? Well, that's what I think you can use Frick in arguing. That's only if you want to rely on some basically, I don't even want to call it dicta, but an unfortunate choice of language. In Fricka. In the analysis in Trogee. Not Fricka. It's Trogee. Well, I quote Fricka, which seems to support his position to a certain extent. Can I just say one thing about the chilling effect of what's happening here is, aren't you encouraging attorneys to tell their clients, don't worry, I'll take care of it, to string things along for periods of time? No. I don't see why we're doing that. Because as long as they are discouraging you, you can extend your period of repose or avail yourself of an action under the fraudulent concealment statute. But if you should learn of what they're doing within a sufficient time, where you could undo what they're doing and still not go beyond your repose period, the cases are clear that that's what you have to do. There are no contrary cases. We believe that the repose actually began to run in 05. And we're well with them. I think we understand your position. We really need to hear from your opponent. And then we'll give you your two opponents. And then we'll give you an opportunity to respond. We're losing our students, but you know. This always happens to me. Every time I go to trial. What I will caution them to do as law students is to make sure that when you do go into private practice that your insurance is paid up. And I hope you don't lose too many of your students once they have to confront this as the arena on which they have to appear. But good luck to you all. Thank you, Mr. Chairman. Counsel, you may proceed. What about this language from Fricka? Now, Justice Gordon doesn't agree with me, but that doesn't bother me. That's not going to stop. Fricka says, when the acts of representation end. When the acts of representation end. Now, that would seem to include not only the acts of preparing a certain document, as it was in this case, but the acts of representing the claim, which would include all that period between the time that the right up to the point where he was let go. Because he did file a 1401, did he not? Yes. And he actually withdrew it, too. Yes. Presumably with the acquiescence, silent, of the client who was allegedly in the courtroom when he withdrew it. The period of repose must begin then. That's his argument. So it would be sometime in 2005, which would have brought him seven years, six years up to bolster what Justice Kale is saying, in point of fact, if you hire a lawyer to fix a problem of this nature, OK, and he could come in and get a reinstatement of the case, and it's not speculative. It's relatively certain. And he doesn't do it. You can sue him in milk records. Now, why should it be any different if it's the original lawyer who fails? I think you comment about that. You say, well, they have to be separate actions for each one of these phases. That was one. But that's an awkward resolution of what is really one continuing body of facts. The answer to the question I think Justice Cahill posed. Well, the answer is right in Lucy v. Law Offices, which is quoted right after, which really says exactly the opposite of what that last sentence was, isn't it? The problem that I think occurs in cases like Troji is that it's not paying close attention to the language of the statute itself, 214.3, because 214.3 doesn't say the last act of representation. No, it doesn't. It says the period begins on the act or omission out of which the injury arises. And Justice Gordon, you used that phrase, the act that creates the problem, which is an excellent paraphrase of precisely what 214.3 is saying. From where you sit. Well, of course. But I also think it's supportive when you look at cases like Serafin, which I think is about as close to on point with this as you can get. And you look at cases like Hester. You see in those circumstances, start with Serafin. In Serafin, you've got 1986, corporation is established. That creates the problem. It enables the lawyer defendant to take majority position in the corporation, so that he can later come along, several years later, lawyers again have the plaintiff sign the document, and they completely dilute his interest. Now, what happened in that? Was that your case? Because I was on that panel. You were on that panel, Judge. Let me give you a dicey situation involved that could have been involved in this case. Let us suppose that the 1401 petition had been allowed. And the attorney amended the settlement agreement, and still got it wrong. That would probably create a new injury. A new cause of action. A new injury. Because I think that's, see, we're going, we've got to get back to the point of the story. What's the difference between failing to properly file the 1401 timely and doing that? It's still a separate thing. The 1401 was timely filed. No, the 1401 was timely filed. There's no question about that. The issue is, does the amendment now of the marital settlement agreement that you're talking about, through a successful 1401, give rise to another injury? If it does, certainly, that would be a separate, a new repose period would begin, because you would be litigating the negligent act that gave rise to an injury at the time of the amendment of the marital settlement agreement. What about inexplicably withdrawing the 1401? That can't possibly cause any injury, for several reasons. And this is, again, the same thing that happened in Serafin v. Seeley. It's a last, it deprived him of the chance to correct. Well, first of all, it didn't deprive him of the chance. I mean, he still had a fair amount of time. I know what the cases say. They say, well, let's do speculative. No, it's not the speculative aspect of it. It's the fact that under Land v. Greenwood, he's got a full year to refile it. The superseding tort. I don't want to call it superseding. Well, that's what I called it in, what is it, the, was it Duke, Gomez case? All I can tell you is that there was a year within which to refile it, and during that time period, within several months. In fact, after the 1401 was withdrawn, he's got new counsel who's asked specifically for a copy of the non-suit order and the petition, the 1401 petition, and the wife's response to it and doesn't reinstate it and doesn't take any steps to fix it. So there's no approximate cause. It doesn't cause any injury. The fact is, we go back to the issue that I think, you know, what's unique, what's interesting about this case is it presents the court with an opportunity to clean up a little bit of the loose language that exists in some of these other cases. Yes, like for androgyny, because I think when you're true to the language of the statute of repose and you recognize it. More easily said than done, counsel. I'm sorry? More easily said than done. I think if you go back and look at Serafin, Serafin nails it. I think Hester, Hester, I don't think you need so much the speculative aspect of it. Hester recognizes that the failure to come in and reinstate the case doesn't cause any injury. The injury occurred when the case was DWP'd. When you look at Fricka, I think Fricka, the last act of representation language, is unnecessary. But I think what it does represent in that case is when the lawyer puts the, when the lawyer finishes his work and sends the deed to the bank in February of 1992 in Fricka, and the court says, no, that was the last act that caused the injury. That was when he sent the deed that deprived the husband of his marital interest in the home. That's the injury again. And that's what it ran from properly, and that's why the client lost in that case. When you look at Trogee, and you see in that case it's that last opportunity to advise the client that he misrecorded the deed in the wrong county, that case, it's really Trogee, I think, that has sort of the unfortunate language. I dealt with that case. I forget the plaintiff's name, but the defendant's name was Clifford. It was the Clifford case. Where I dealt with that and held that there was no. That's Lopez. Lopez. Yeah. Lopez versus Clifford, but that was because he didn't get a lawyer before it ran. That was, I think, the distinction in that case is he had no counsel before the time period for filing the suit within the remaining period limitations. It wasn't that he didn't get a lawyer. It's that he was advised that he need not get the lawyer. That's true, too. Because the law is not totally clear that you have to get a lawyer in order for the superseding tort construct to be invoked, but simply that you have time. I understand what you're saying. And in this case, though, we have a pretty straightforward, that's why I cited Land versus Greenwood circumstance, where you have ample time to refile the 1401, and you have new successor counsel who is in full possession of it and actually trying to deal with the merits of the issue in the conversion case. So I mean, all the factors are present. But I do want to come back to this point. I think that you can use this case as an opportunity to make it clear that the repose period runs not just from the last act of representation, but from the last act out of which the injury arises or originates. And that's the kind of language, when the Supreme Court in Orlak talked about the meaning of that phrase arising out of, they talked about an origin or source. And that's the language that's used in 214.3. And so if you take the position that the origin of the injury, the source of the injury, which in this case, the injury here was really complicated because it was superseded by, there was something that intervened here, and that was the conversion action. Now, suppose he had prevailed in the conversion action. I'm not following your question. Well, it would have meant that some judge interpreted the original filing as being sufficient to protect his interest. Sufficient to protect his interest. We wouldn't be before you today. That's true. But the conversion didn't resolve that issue. The only issue in the conversion was whether he wrongly withheld the check. It had nothing to do with whether or not the action was correct. Actually, the conversion action, in terms of the theory, is irrelevant. Is that so? Because the statute of repose is generated by the act of negligence rather than the accrual of the cause of action. Precisely. There was no evidence in this case that there was an act. But in this case, the accrual of the cause of action, which results from the decision in Malley, would be reflective of the fact only of his awareness to countermand any assertion of any kind of estoppel-like or fraudulent concealment type of theory to avoid the consequences. Yes, those facts, if nothing else, make it plain that there could not be any fraudulent concealment or equitable estoppel that would extend past the date where he is at least believing that the reason he lost the conversion case is because of the de facto. But the questioning is that I think, basically, Justice Gale, if I understand him correctly, and if I do, he reflects some of my concern as well, notwithstanding the adamancy with which I've asserted some of your presidential cases. Why, if there are further acts of negligence that feed the flames of the injury here, should those further acts not count? Why put the pressure on the plaintiff to act with regard to the initial failure when you know that that defeats the value of judicial economy so that he shouldn't have to consider filing lawsuits when he doesn't even have a cause of action yet? Because those additional acts do not count. And where is he going to go with his lawsuit? I mean, I know the cases talk about the irony and disregard the irony of the fact that if you apply the statute of repose literally as it should be applied, it could wipe your case out before the case even accrues. That's right. Because it feeds on the value of ultimately creating a kind of freedom from bondage. Yes, and that's exactly the Anderson case you mentioned, Omega versus Holy Cross Hospital case, exactly that point. I think the answer in this case, it's not a freedom of bondage. It results in a kind of a dissection that is counterintuitive because you know that each segment of defalcation by the attorney is independently actionable. But it did not cause the harm that we're talking about here. The injury that we're talking about is the fact that the marital settlement agreement, according to plaintiffs, did not adequately or accurately reflect the loans and debts and the division of those items. And the fact is, the steps taken are real. Because the original act didn't cause the harm either, yet. The harm is caused when the harm is caused. Oh, no. And the harm is caused by a convergence of factors. Respectively. It was a trigger, but you certainly could not avoid characterizing the acts of omission that follow the initial negligence as being contributory causes. No, I respectfully disagree with you, Judge. In my logic course, I think I'd get a D on the exam, if not an F, if I ignored those factors as being causative in fact. I think the fact- They may not be, so to speak, legal causes, but that depends on how we ultimately work the rule. But in terms of whether they are factual causes, Socrates would insist that they're causative. I understand your point, Judge. But respectfully, what I think is that the moment the marital settlement agreement is made into a judgment, a judgment of a court that says he has responsibility for all of these debts and obligations, the damage is done. That's it. The exposure exists. Now, I agree. It hasn't come home to roost yet at that point, because not necessarily has anybody made him pay. Because the statute of repose doesn't look to whether it comes home to him. That's exactly right. And so legally, as you point out, maybe not factually, but legally, there's no question that that is the point at which the statute of repose commences in this case. And the subsequent acts that occur, that you've characterized as possibly negligent acts or omissions, do not in any way change or affect what happened when that judgment was entered, exposing him to those risks. It doesn't contribute to it. It doesn't make it worse. It doesn't make it better. It doesn't affect it at all. So in effect, your argument would be that the law is not oblivious to the so-called equities or problems postured by the subsequent actions, but covers it through concepts such as equitable estoppel or conspiracy to fraudulent concealment and the like. That's the balancing act. It keeps them separate. That's the balancing act, yes. No question about it. But we still come back to the fact that the structure of this and the opportunity the case proposes is tied to the act out of which the injury originates. What is the origin of the injury? That's the language that you need to clean up, I think, from some of these other cases that talk simply about the last act of representation. Because saying just the last act of representation is misleading. Why should his counsel, let's say his counsel, goes through a sequence of stages of service? The first stage is to get the marital contract drafted to reflect the interests of his client. OK. And he screws up. He doesn't do a good job there. OK. But his service continues. Not having faltered on that, he's still his lawyer to fix it. And if he doesn't fix it through acts of negligence, there should be a malpractice action for that. And when he doesn't fix it at that stage and it goes through another stage, there should be a malpractice action for that. Now, your response to that is, yes, he may have malpractice. But there are three malpractice actions, not one. And if it's a separate malpractice action, each segment has to be judged under malpractice principles where you have to establish the probability of harm, et cetera. And that and each one of these stages can feed off the first, say, the damage having been done there. Everything else is speculative. It doesn't necessarily even have to be an answer that it's just speculative. Even if you took these apart, he still loses. Because if you look at this from the standpoint of the defect in the agreement and the failure to file a post-judgment motion within 30 days, we know that those are clearly outside the repose period. And then if you move to the 1401 petition, that's the other act of negligence here, the filing of that. We know that he still had, after it was dismissed, it could still be corrected. So we have a proximate cause problem. So even if you segregate, in this instance, for the sake of argument, each of these is. The proximate cause of the injury here was the conversion case. This is the point. Nobody's briefed this. And I don't want to get too metaphysical about it. But the point is that once he held that check that was made out to his wife and turned this into a conversion case. Oh, you're absolutely right about that. And it has nothing to do with the manner of settlement of the result. Of course it didn't. So he's never been able, he hasn't established within the context of the facts of this case that that marital settlement agreement initially was negligent. Well, that's absolutely true. Because he can't point to the conversion damage as evidence of the negligence of the marital settlement agreement. He lost the conversion. The conversion damage was his failure to turn over a check that was made out to his wife. He wrongfully withheld property that did not belong to him. That was my only blame. Nobody briefed that issue. Actually, everybody just assumed that the marital settlement agreement was negligent because it ended up on damages from the conversion. No, there is, to counsel, there is a brief reference in your briefs to the fact that he sat and held the check and that's wrong, which I frankly discounted because of the right to set off. Well, but the set off, wouldn't he have a right? Doesn't he have a right, if he has a right, to set off or to counterclaim? Counterclaim, perhaps. Counterclaim, perhaps, but he needs to set off. Is it not subject to self-help? No, he is not entitled to self-help himself under that. He's wrongful on a tort basis. He's wrongfully withholding property of another. There's no question about it. He does not get to self-help. He's not going to pay it in similar to an interpleader action to the clerk of the court, rather than a counterclaim. I suppose that's possible, but it would have to be a counterclaim. I don't think it was properly set off at all. And I think your point is well taken. We did actually brief that at the trial level. So your point was made at the trial. But I didn't see anything about it in the briefs with respect to whether or not they'd ever sufficiently established that there was every negligence to begin with when it was superseded by this conversion act. There is. I want to leave this to stand for some time, but there was just one other point I want to make quickly, and that is in the context of this issue of the starting point of the repose period. And Mr. Seward has argued throughout this case that continuing negligent representation rule, when you look at Cunningham, and Justice Gordon, you mentioned the Cunningham case, and you recognize that distinction that that statute of repose talks about act omission or occurrence. And you do have a continuing negligent treatment rule that applies there. It's because there is added injury with each treatment that is encompassed within that idea of an occurrence, which is what's missing from the statute of repose in the legal malpractice statute in 214.3, which I think is a point that can be used to buttress this idea that the origin of the injury, that original negligent act or omission that is the origin of the injury, is the starting point, unlike the possibility in a medical malpractice case where there can be an occurrence that can be multiple injuries very well. Well, you're talking there, as the Supreme Court analyzes it, you could have an accumulation of negligence in a medical context, which accumulate to create an injury rather than. It starts the repose period. Right. Because they use the word occurrence. So when we talk about this ongoing problem that you were discussing earlier of act after act after act, the legislature has seen fit to encompass that by adding the word occurrence in the met mal statute, but leaving it out in the legal malpractice statute limitations. And I think that buttresses the point. I won't leave Mr. Standaff your time. Counsel, you want a few minutes? Just a few minutes. I have very little to add in the case of course, counsel. First of all, we were talking a little bit about some 17 months. Well, you've helped us a great deal with your brief. Thank you. Thank you. You were talking about a 17 month period. It's really two weeks shy of 24 months from the date of the judgment for Francis on 10-1105 and the date they filed suit on 10-107. Why that's important is because we actually believe under statute of limitations, he knew of his damage and was suffering damages earlier than that and should be barred by the statute of limitations. That is, he hired his lawyer and he had answered the complaint for conversion when Francis had filed that complaint in April of 05. And Don Johnson, his new attorney, got all the paperwork from the lawyers and knew that and went forward. So he had incurred damages at that point and legal fees, which he tried to collect and has pled that he is entitled to in this case. The attorney's fees he paid to Johnson and was trying to defend that case. So we believe that at least that two weeks is eaten up earlier on, minor point. The issue about proximate cause, with regard to the conversion action, we squarely raised that in the trial court. Judge did not want to answer that. She wanted the statute of limitations. Why not? It would seem to me that, how can he bootstrap the negligence with the drafting of the marital settlement agreement? It would seem to me that the conversion action is clearly an interruption of that. His own proximate cause was he failed to turn over the check made out to his ex-wife. We not only said that, but we also said it was a superseding causation argument when we made that mention. And the trial court didn't want to hear about that. No. I mean, we are. But he obviously accepted, then, the whole conversion cause of action as evidentiary material of original negligence on behalf of your client. I don't see how you can link it. I don't know that the conversion action plays any part in this, except for the evidentiary part that it plays in highlighting the fact that he would have, in all events, he would have discovered the original negligence once the decision in that case came down. But the case itself doesn't fit anywhere in the chain of either extending or lowering up. Except in order to find the, there has to be an injury as a result of the original lawyer's negligence. No, only for the statute of limitations to take effect, not for the statute of repose. No, you're not. Well, never mind. What didn't I get? No, you're doing OK. I'd rather have you lecture me here now. Upstairs. All I'm suggesting to you is that the plaintiff, in this case, in order to establish that he was injured, had to use the conversion action, the judgment against him in the conversion action. Now, if the judgment in the conversion action is totally independent of any negligence of the lawyer earlier on, because the conversion action was based on his refusal to turn over the check. No, but it would show how you've got a link. You've got a link that that check being made out to his former wife as being an evidence of the original lawyer's negligence. But the whole purpose, as I gather it, of this entire configuration of injury is with respect to that check. Evidently, what was left out of the marital agreement was ultimately the allocation of the proceeds of that particular property. So that, you know. Yeah, but there's no evidence of that check being given solely to his wife based on the earlier marital agreement. But at that point in time, when he goes through with the court proceeding, he becomes aware of the fact that his lawyers had no more magic for him, that they couldn't bail themselves or him out. Well, what we're giving the lawyers an example of is what goes on in our impressions countries. But go ahead, counsel. You have an opportunity to continue. It's a little more peaceful than that, because the bourbon is not sitting there. Well. Not true, just a joke. It's a joke. Justice Gordon and I have been doing this together now for 17 wonderful years. And we've never really had an argument that's led to blows yet. Go ahead, counsel. The only other point I wanted to make is that why the date of running in the Statute of Proposal has to be the initial date of the MSA when it was entered, in June 18th of 2001, is because of their pleading and their admissions. Mr. Maurer, they plead, quote, discovered that the schedule included in the MSA was incomplete. And then he contacted his lawyers, the complaint alleges, he contacted his two lawyers about the problem. Wanted to meet with him, contact Mr. Rubin and senior partner Mr. Berman. Not just Mr. Rubin, because he knew he had a problem. But he also alleges that there were continued assurances during that period that the problem was going to be resolved. But he pled that, and this is in paragraph 23 of his complaint, he pled that he knew at that point he had exposure on loans and on guarantees. That should have been allocated equally between his ex-wife and him. But now, by virtue of the defendant's negligence, they were completely his responsibility. That's in paragraph 23 of the complaint. We're just looking for the area of which no question can be raised as to the appropriateness of a 619 disposition, which is a summary disposition if it's a fact motion, although it doesn't necessarily have to be that. And that's where 615 and 619 can converge on judgment on the pleadings. But if it's a fact motion, then there can't be any weighing of the evidence if there's a jury demand. And if there isn't, then that has to be relegated to a separate proceeding. So anything that requires weighing is problematical. However, at a point where the decision comes down in Maui, which shows that nothing can help, at that point, we have no concern about a summary disposition, subject to the premises that we operate with. I'm not bottom line in this case. Anything else? No. Counsel, thank you. Mr. Seabright, a final word. Oh, sure. And it's very short. One thing that was said earlier on was that there was an apparent acquiescence by Mr. Mauer because he was in the courtroom. His affidavit has covered that. All of the proceedings with regard to the case on that date took place in Maui. This case is not going to hang on that. No. I know that. It will hang on statutes of repose because, as you stated before, the statute of limitations issue is certainly in play because of the judgment. That's when the damage happened, the judgment in the second case. The damage has nothing to do with the statute of repose other than being an indication of prior knowledge. And even that's not necessary for the statute of repose. All right. I don't want to belabor the point. I've said enough with respect to whether or not the conversion action can serve as a predicate for the negligence of the original lawyer. When the conversion action itself is based on the behavior of your client by failing to turn over the check, is there any evidentiary value to it with respect to establishing that that original marital settlement agreement was negligently prepared? That's all. Well, that's something for later on. Well, let's put it this way, Mr. Seward. I finally am, I think, on the cutting edge with your statement. Could there have been any further action by the husband after that decision came down with regard to Mrs. Mowery requiring a reallocation of the marital assets? Or would it have been considered a splitting of the cause of action on race judicata since it is a matter that would have had to have been raised in the context of that conversion action? And consequently, once that conversion action is decided, in favor of the wife, it ends any further speculation as to any additional entitlements that the husband might anticipate to redeem or salvage whatever he lost. I agree that it ended in October of 05. There's no question about that. But as to the repose, you had a series of negligence. This agreement could have been saved on a number of occasions and was not. And it was a series of negligent acts, which led to? Which led to the damage later on. And it was the last of the negligent acts. And I understand the problem that you're having with what ultimately happened in the conversion case. Our theory of the case is that we have the agreement. Is this set up procedurally permissible in a conversion action? I believe that it is. Then if the set off isn't raised, or if the set off is raised and it's stricken, doesn't it mean that any hopes by the husband of any kind of readjustment of the marital estate as a matter of law is dead in the water? As of October of 05, it sure was. But the set off was raised in the subsequent lawsuit, in the conversion lawsuit. It was raised. And disallowed? And disallowed. And it was disallowed. But we don't need evidence of that. We could presume that. Because even if we don't have a record that establishes that, we could presume that that disposition would preclude any further set offs, or counterclaims, or original claims to recoup the damage, because it would have been splitting the cause of action. Yes, but had the marital settlement agreement been correctly drawn, or had it been corrected thereafter? The check wouldn't have been issued to her in her name only. Or the set off. That's what we've got to presume, right? Or that the set off would have been allowed. Had it been drawn correctly, the set off would have been allowed. And that's alleged in the pleadings. It could not have been simply the person who cut the check originally misread the marital settlement agreement, which may have had nothing to do with the negligence of the original attorney, their claim. But then it would have been curable in court. Yes. Since there was a set off. Yes. But by refusing to tender the check, and allowing a conversion action to proceed, you've really made it difficult for us to trace proximate cause back to their claim. Well, approximate cause, I think, is something that's more of a factual matter anyway. You have to argue, don't you, that the $800,000 were approximately his loss. His loss of the conversion case was directly attributable to the behavior. Yes. That had that agreement been properly drawn. There would have never been a conversion. There wouldn't have been a conversion. Well, of course there would have been, because he refused to turn over the check. That's what a conversion action is about. It didn't have anything to do with their negligence. It had to do with your refusal to turn over a check made out to his ex-wife.  here for a moment. But if the settlement agreement had been properly drawn, and the check would have been issued by someone who didn't know about a marital settlement agreement drawn to the wife, it would have been a routine thing to say, this is what's happening. I presume there's even a question about it. If a check made out to X is delivered to Y, is Y under a duty to transmit the check to X at the risk of being a converter? Or could he simply sit on it as long as he doesn't purport to cash it, which may invoke other kinds of questions. The more interesting question is, could he use it as evidence of the negligence of his first lawyer? He doesn't necessarily use that, but he certainly can use it. I don't see what other evidence he's got in this case. He certainly can use the decision against him by defending against a malpractice case. Establish damages. Well, our position is it would have been routine. OK. Gentlemen, it's a very interesting case. Of course, as you know from your research. I think all the briefs were really good, but I particularly appreciate some convenience features that Mr. Rubin's brief provided in summarizing, outlining the chronologies and summarizing some of the various incidents that took place saved some considerable time. But we thank all three of you. There were really fine. The litigants in this case were well-served by their appellate counsels. Yes. Thank you.